O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| AMERICAN ALTERNATIVE INSURANCE CORPORATION, | ) ) ) | Case No. EDCV 12-0622 JGB (DTBx) |
| Plaintiff, | ) ) | **ORDER GRANTING IN PART AND DENYING IN PART AAIC'S** |
| v. | ) ) ) | **MOTION FOR SUMMARY JUDGMENT ON HUDSON'S COUNTERCLAIMS** |
| HUDSON SPECIALTY INSURANCE COMPANY, and DOES 1-10, | ) ) ) ) | |
| Defendant. | ) ) ) | |

_____

Before the Court is a Motion for Summary Judgment or, in the alternative, Partial Summary Judgment on Hudson's Counterclaims filed by Plaintiff and Counter-Defendant American Alternative Insurance Corporation.

After considering all papers submitted in support of and in opposition to the motions, as well as the arguments advanced by counsel at the April 1, 2013

hearing, the Court GRANTS IN PART AND DENIES IN PART American Alternative's Motion for Summary Judgment.

## I.   BACKGROUND

### A.   Procedural Background

On March 26, 2012, Plaintiff American Alternative Insurance Company ("AAIC") filed its Amended Complaint against Hudson Insurance Company ("Hudson") in the California Superior Court for the County of Riverside, alleging three claims for declaratory relief. (See Not. of Removal ("Not."), Ex. A, Compl., Doc. No. 1.) Hudson removed the action to this Court on April 24, 2012. (Not.) On May 15, 2012, Hudson answered and asserted three counterclaims for declaratory relief, equitable indemnity, and equitable subrogation. ("Counterclaim," Doc. No. 15.) AAIC answered the Counterclaim on June 8, 2012. (Doc. No. 16.)

AAIC filed its Motion for Summary Judgment or Partial Summary Judgment as to Hudson's counterclaims on January 14, 2013. ("MSJ," Doc. No. 32.) AAIC included the following documents in support of its MSJ: Statement of Uncontroverted Facts and Conclusions of Law ("SUF," Doc. No. 32-1); Request for Judicial Notice ("RJN," Doc. No.

32-3)[1]; Declaration of Wayne Falsetto (Doc. No. 32-10) attaching the AAIC's excess liability insurance policy covering Minuteman Parking Company ("Minuteman") ("AAIC Excess Policy" or "Excess Policy," Exh. 4, Doc. No. 32-10); Declaration of Jennifer M. Kokes (Doc. No. 32-12) attaching AAIC's requests for admission served on Hudson ("RFA," Exh. 5, Doc. No. 32-13), Hudson's primary insurance policy covering Minuteman ("Hudson Primary Policy" or "Primary Policy," RFA Exh. 1, Doc. No. 32-13); Hudson's responses to AAIC's requests for admission, ("Rsp. to RFA," Exh. 6, Doc. No. 32-14), and Hudson's responses to interrogatories ("Rsp. to Inter.," Exh. 7, Doc. No. 32-15).

On January 22, 2013, Hudson filed its Opposition ("Opp'n," Doc. No. 34), along with its Statement of Genuine Issues of Material Fact and Additional Material Facts ("SGI," Doc. No. 34-3), a Declaration of Gary Hamblet (Doc. No. 34-1) attaching eight exhibits (Exhs. 8-14, 19), and a Declaration of Greg Edwards (Doc. No. 34-2) attaching seven exhibits (Exh. 15-18, 20-22). On March 11, 2013, Hudson supplemented its opposition with a

---

[1] AAIC requests judicial notice of the Complaint filed in <u>Tory Fretz v. Minuteman Parking Company</u>, Riverside Superior Court, No. 090666 and several documents filed in the instant action, including AAIC's Amended Complaint and Hudson's Answer and Counterclaim. The Court grants AAIC's RJN, as the submitted documents are court filings and thus appropriate for judicial notice. <u>See</u> <u>Reyn's Pasta Bella, LLC v. Visa USA, Inc.</u>, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citing <u>Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank</u>, 136 F.3d 1360, 1364 (9th Cir. 1998)).

Declaration of Edward J. McKinnon attaching his Rule 26 Expert Report.  (Doc. No. 38.)  AAIC filed its Reply on January 18, 2013 ("Reply," Doc. No. 39), along with its Response to Hudson's Statement of Additional Facts ("Reply SUF," Doc. No. 39-1), Objections to the McKinnon Declaration ("Obj.," Doc. No. 39-2), and a Reply Declaration of Jennifer Kokes (Doc. No. 39-3) attaching several exhibits (Exhs. 23-25).

**B.  AAIC's Complaint**

    AAIC's Complaint arises from an underlying personal injury judgment against Minuteman.  (Compl., ¶ 1.) Hudson insured Minuteman under a primary policy and AAIC covered Minuteman under an excess policy.  (Compl., ¶ 1.) AAIC alleges that Hudson is obligated to pay the entire judgment against Minuteman as well as prejudgment interest and costs because Hudson (1) breached its duty to timely communicate pretrial settlement offers to AAIC (Compl., ¶¶56-59) and (2) unreasonably failed to settle the underlying action for an amount less than AAIC's policy limits in violation of Hudson's implied covenant of good faith and fair dealing (Compl., ¶¶ 50-55).

**C.   Hudson's Counterclaim**

Hudson counterclaims that AAIC unreasonably failed to settle the underlying action when it was presented with pretrial settlement offers that were within its coverage limits.  (Counterclaim, ¶ 13.)  Due to this breach, Hudson claims that AAIC is responsible for (1) the defense costs Hudson incurred after AAIC failed to settle and (2) $219,289.18 in judgment costs and interest Hudson paid as part of the final judgment.  (Counterclaim, ¶ 13.)  Hudson brings three claims for declaratory relief, equitable indemnity, and equitable subrogation. (Counterclaim, ¶¶ 11-20.)

## II.   LEGAL STANDARD[2]

A motion for partial summary adjudication is governed by the same standard as a motion for summary judgment. <u>Green v. Sun Life Assur. Co. of Canada</u>, 383 F. Supp. 2d 1224, 1226 (C.D. Cal. 2005).  A court shall grant a motion for summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  The moving party must show that "under

---

[2] Unless otherwise noted, all references to "Rule" refer to the Federal Rules of Civil Procedure.

the governing law, there can be but one reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. See Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998) (citing Anderson, 477 U.S. at 256-57); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because summary judgment is a "drastic device" that cuts off a party's right to present its case to a jury, the moving party bears a "heavy burden" of demonstrating the absence of any genuine issue of material fact. See Avalos v. Baca, No. 05-CV-07602-DDP, 2006 WL 2294878 (C.D. Cal. Aug. 7, 2006) (quoting Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc., 182 F.3d 157, 160 (2d Cir. 1999)).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Celotex, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. Id.; Horphag Research Ltd. v.

1    <u>Garcia</u>, 475 F.3d 1029, 1035 (9th Cir. 2007).  "[A]

2    summary judgment motion may properly be made in reliance

3    solely on the 'pleadings, depositions, answers to

4    interrogatories, and admissions on file.'"  <u>Celotex</u>, 477

5    U.S. at 324 (quoting Fed. R. Civ. P. 56(c)).

6         The burden then shifts to the non-moving party to

7    show that there is a genuine issue of material fact that

8    must be resolved at trial.  Fed. R. Civ. P. 56(c);

9    <u>Celotex</u>, 477 U.S. at 324; <u>Anderson</u>, 477 U.S. at 256.  The

10   non-moving party must make an affirmative showing on all

11   matters placed in issue by the motion as to which it has

12   the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322;

13   <u>Anderson</u>, 477 U.S. at 252.  <u>See also</u> William W.

14   Schwarzer, A. Wallace Tashima & James M. Wagstaffe,

15   <u>Federal Civil Procedure Before Trial</u> § 14:144.  A genuine

16   issue of material fact will exist "if the evidence is

17   such that a reasonable jury could return a verdict for

18   the non-moving party." <u>Anderson</u>, 477 U.S. at 248.

19        In ruling on a motion for summary judgment, a court

20   construes the evidence in the light most favorable to the

21   non-moving party.  <u>Scott v. Harris</u>, 550 U.S. 372, 378,

22   380 (2007); <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135 (9th

23   Cir. 1991); <u>T.W. Elec. Serv. Inc. v. Pac. Elec.</u>

24   <u>Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).

25

26

27

28

## III. DISCUSSION

**A.   Undisputed Facts**

The following material facts are sufficiently supported by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for purposes of the MSJ.  L.R. 56-3 (facts not "controverted by declaration or other written evidence" are assumed to exist without controversy); Fed. R. Civ. P. 56(e)(2) (stating that where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").

**1.   Accident**

Minuteman provided valet parking services for the Fantasy Springs Casino in Riverside County, California. (SUF ¶ 1; SGI ¶ 1.)  On October 31, 2008, a vehicle operated by a Minuteman employee struck Tory Fretz ("Fretz") in the Casino's parking area.  (SUF ¶ 2; SGI ¶ 2.)  Fretz was treated at a local emergency room and then for four days at Loma Linda Hospital.  (June 28, 2010 Letter from Defense Counsel to M. Barney ("June 28, 2010 Report"), Edwards Decl., Exh. 8, 210-11.)  Thereafter, she had several follow up visits with an internist and

opthomologist.  (June 28, 2010 Report, Edwards Decl.,
Exh. 8, 212-16.)

### 2.  Primary and Excess Insurance Policies

At the time of the accident, Hudson insured Minuteman
under a primary insurance policy which provided liability
coverage up to $1 million.  (Hudson Primary Policy; SUF
¶¶ 3-4; SGI ¶¶ 3-4.)  The Primary Policy states that
Hudson "will pay those sums that the Insured becomes
legally obligated to pay as damages because of 'bodily
injury'. . . ."  (SUF ¶6; SGI ¶6.)  Hudson also "will
have the right and duty to defend the Insured against any
'suit' seeking those damages" and that "right and duty to
defend ends when we have used up the applicable limit of
insurance in the payment of judgments or settlements . .
. ." (SUF ¶ 6; SGI ¶ 6.)  Under Supplementary Payments,
the Hudson Primary Policy states that Hudson will pay
"[a]ll costs taxed against the insured in the 'suit'" and
"[p]rejudgment interest awarded against the insured on
that part of the judgment we pay" or "prejudgment
interest based on that period of time after the offer" to
pay the applicable limit of insurance.  (SUF ¶ 7; SGI ¶
7.)
AAIC insured Minuteman under an excess insurance
policy with coverage of $4 million available after
exhaustion of the $1 million provided by the Hudson

1   Primary Policy.  (AAIC Excess Policy; SUF ¶¶ 8-9, 12; SGI

2   ¶¶ 8-9, 12.)  The AAIC Excess Policy provides that:

3           "[w]e will pay, on behalf of the Insured, sums in
            excess of the amount payable under the terms of
4           the [Hudson Primary Policy], that the Insured
            becomes legally obligated to pay as damages
5           because of injury or damage to which this
            insurance applies. . . . In no event will this
6           insurance apply unless the [Hudson Primary Policy]
            applies or would apply but for the exhaustion of
7           its applicable Limit of Liability."

8   (SUF ¶ 11; SGI ¶ 11.)  The AAIC Excess Policy also

9   provided that AAIC would "assume charge of the settlement

10  or defense of any claim or suit against the insured when

11  the aggregate Limit of Liability of the [Hudson Primary

12  Policy] has been exhausted by payment of claims,"

13  otherwise, AAIC would not be obligated to pay defense

14  expenses.  (SUF ¶ 13; SGI ¶ 13.)

15

16      **3.  Fretz Litigation & Settlement Offers**

17

18      On October 22, 2009, Fretz sued Minuteman in

19  Riverside Superior Court seeking damages sustained in the

20  accident.  ("Fretz Action," SUF ¶ 14; SGI ¶ 14.)

21  Pursuant to the Primary Policy, Hudson retained Lois

22  Brisbois Bisgaard & Smith LLP to defend Minuteman in the

23  Fretz Action.  (SUF ¶ 15; SGI ¶ 15.)  The parties

24  proceeded with early mediation.  (SGI ¶ 41; Reply SUF ¶

25  41.)  On June 28, 2010, defense counsel prepared and sent

26  to Hudson an evaluation report which examined Fretz's

27  bodily injuries, loss of earnings, and economic damages

28  and gave a recommended settlement range of $500,000 to

$700,000.  (June 28, 2010 Report.)  The report reviewed
Fretz's medical records and noted that Fretz sustained
"significant injuries limited to her head and neck,"
including nine facial/skull fractures, small, bilateral,
frontal hematomas, and a small, left front brain
hemorrhagic contusion. (June 28, 2010 Report at 210-11.)
The report also noted that at Loma Linda Hospital "no
neurological deficits were noted."  (Id. at 212.)
Throughout Fretz's followup care, the Report noted that
Fretz complained of headaches, blurred vision,
forgetfulness, and osteoarthritis.  (Id. at 212-216.)
Some of these symptoms improved over time.  (Id.)

On or about July 21, 2010, Fretz mailed Hudson a
Statutory Offer to Compromise pursuant to Cal. Code Civ.
P. § 998 and Cal Civ. Code § 3291 offering to settle the
Fretz Action for $1 million. ("July § 998 Offer," SUF ¶
16; SGI ¶ 16; Kokes Decl., Exh. 5 at 171-72; Rsp. to RFA
No. 22.)  Hudson rejected the July § 998 Offer on August
20, 2010.  (SUF ¶ 17; SGI ¶ 17; Hamblet Decl, Exh. 18,
Deposition of Gary Edwards at 251.)  On the same day,
Hudson notified AAIC of Fretz's claim and her July § 998
Offer.  (SGI ¶ 44; Reply SUF ¶ 44.)

On April 8, 2011, defense counsel reported to Hudson
and AAIC that he consulted with a neuro-radiologist who
opined that Fretz sustained permanent brain damage which
could "impair emotional functions and personality."
("April 8, 2011 Letter," Edwards Decl., Exh. 10, 223; SGI
¶ 45; SUF Reply ¶ 45.)  The radiologist also noted that

11

Fretz's medical records from Loma Linda Hospital immediately following the accident "did not suggest a significant brain injury." (April 8, Letter at 233.)

On May 5, 2011, defense counsel reported to Hudson and AAIC that Fretz's neuropsychologist testified that Fretz was psychologically impaired resulting in "profound behavioral changes observed by family and friends." (SGI ¶ 47; Reply SUF ¶ 47; Edwards Decl., Exh. 11.) Defense counsel also reported that Fretz's lifetime medical care could total $904,876. (SGI ¶ 48; Reply SUF ¶ 48.)

On May 9, 2011, Fretz offered to settle the Action for $3 million. (Rsp. to RFA No. 34.) On May 13, 2011, defense counsel prepared a pretrial report for Hudson and AAIC which estimated a net verdict against Minuteman in the range of $3,100,000 to $3,250,000. ("Pretrial Report," Edwards Decl., Exh. 11, 234; SGI ¶ 49; Reply SUF ¶ 49.) Defense counsel reported to Hudson and AAIC on May 16, 2011 that Fretz renewed her offered to settle for $3 million. (SGI ¶ 50; Reply SUF ¶ 50.) On May 16 or 17, 2011, Hudson first made its $1 million policy limits available to settle the Fretz Action. (SUF ¶ 18; SGI ¶ 18.) On May 17, 2011, AAIC and Hudson countered, offering Fretz a $1.25 million settlement, which was rejected. (Edwards Decl., Exh. 14.) Fretz increased her settlement demand from $3 million and by May 21, 2011 requested a $5 million settlement. (Edwards Decl., Exh. 19.)

AAIC set aside a $3 million reserve for the Fretz Action on May 24, 2011, but it was not offered to Fretz prior to the jury verdict.  (SGI ¶ 59; Reply SUF ¶ 59.) On June 1, 2011, Fretz informed defense counsel that she would "likely settle" for $3 million and this information was communicated to AAIC.  (SGI ¶¶ 53-54; Reply SUF ¶¶ 53-54.)

During the Fretz trial on June 5, 2011, the President of Minuteman emailed AAIC demanding that it "take any steps necessary to settle this case right away" and "stress[ing] the importance to us that you settle this under our policy limits immediately."  (Hamblet Decl., Exh. 22; SGI ¶ 55; Reply SUF ¶ 55.)  During the trial, AAIC authorized up to $5 million to settle the case, but it was not offered to Fretz before the verdict.  (SGI ¶ 56; Reply SUF ¶ 56.)

A jury found in favor of Fretz and against Minuteman in the Fretz Action.  (SUF ¶ 20; SGI ¶ 20.)  On June 21, 2011, judgment was entered in the amount of $6,520,790.50, plus $681,313,39 in costs, totaling $7,202,104 ("Judgment").  (SUF ¶¶ 21-22, 24; SGI ¶¶ 21-22, 24.)  Of the costs, $580,350.31 represented prejudgment interest from July 21, 2010, the date of the § 998 Offer, to June 10, 2011.  (SUF ¶ 23; SGI ¶ 23.)

**4.   The Settlement**

1    On July 22, 2011, the Fretz Action was settled for
2  the amount of the Judgment.  (SUF ¶ 24; SGI ¶ 24.)
3  Hudson contributed $1 million plus $219,289, which Hudson
4  contends constituted costs and interest.  (SUF ¶ 25; SGI
5  ¶ 25.)  AAIC funded the remainder of the Judgment.  (SUF
6  ¶ 26; SGI ¶ 26.)  Hudson paid all of the defense costs
7  incurred to defend Minuteman through trial.  (SGI ¶ 57;
8  Reply SUF ¶ 57.)
9
10 **B.   Genuine Issues of Material Fact**
11
12    The Court finds that neither AAIC nor Hudson has
13 submitted evidence to establish that any material fact in
14 this matter is disputed.  Hudson does not dispute any of
15 the facts presented in AAIC's SUF.  All of the
16 purportedly disputed facts in AAIC's Reply SUF are
17 contentions about relevance, materiality, or conclusions
18 of law regarding Hudson's breach of its duty of good
19 faith and fair dealing.  Thus, as there is no genuine
20 issue as to any material fact, the Court considers
21 whether the moving party, under Rule 56(a) is entitled to
22 judgment as a matter of law.[3]
23
24 **C.   Judgment as a Matter of Law**
25
26 _____
27    [3] Hudson did not move for summary judgment on the
   issue of AAIC's alleged bad faith refusal to settle, and
   argues only that a material dispute precludes summary
28 judgment for AAIC on Hudson's counterclaims.

AAIC requests summary judgment on Hudson's three counterclaims which contend that AAIC is responsible for defense costs and costs taxed on the Fretz verdict due to AAIC's breach of its duty to settle.  AAIC argues that Hudson is contractually obligated to pay these costs therefore it is entitled to judgment as a matter of law. It argues that a primary insurer has no legal claim for breach of a duty to settle against an excess insurer. Hudson, on the other hand, argues that AAIC breached its implied good faith obligation to reasonably settle the Fretz action, resulting in increased costs to Hudson.

**1.  Hudson's second and third counterclaims state claims on which relief may be granted**

Hudson brings its second counterclaim under a theory of equitable indemnity and its third counterclaim under equitable subrogation.  AAIC argues that these causes of action do not provide Hudson with claims for relief.  As to the theory of equitable subrogation, AAIC argues that Hudson, as a primary insurer, lacks standing to bring this claim.  AAIC also argues that insurers cannot be held liable under a theory of equitable indemnity.

**a.  Under a theory of equitable subrogation, an excess insurer has a good faith obligation**

1      **to a primary insurer to reasonably settle a**

2      **case**

3

4      In each policy of liability insurance, California law

5  implies a covenant of good faith and fair dealing.  PPG

6  Indus., Inc. v. Transamerica Ins. Co., 20 Cal. 4th 310,

7  314 (1999).  This covenant imposes an obligation on an

8  insurance company to accept a reasonable offer of

9  settlement within the insurer's policy limits when there

10 is a substantial likelihood of recovery in excess of

11 those limits.  Id.; Safeco Ins. Co. of America v. Parks,

12 170 Cal. App. 4th 992, 1006 (2009).  The covenant runs

13 between the excess or primary insurer and the insured.

14 See Diamond Heights Homeowners Assn. v. Nat'l Am. Ins.

15 Co., 227 Cal. App. 3d 563, 578 (Ct. App. 1991) ("Any

16 insurer, whether excess or primary, in conducting

17 settlement negotiations, is subject to an implied duty of

18 good faith and fair dealing which requires it to consider

19 the interests of the insured equally with its own and

20 evaluate settlement proposals as though it alone carried

21 the entire risk of loss.").

22      Traditionally, the covenant of good faith and fair

23 dealing arises from the agreement between the insured and

24 the insurer.  See Fireman's Fund Ins. Co. v. Maryland

25 Cas. Co., 21 Cal. App. 4th 1586, 1599 (1994) ("The

26 prerequisite for any action for breach of the implied

27 covenant of good faith and fair dealing is the existence

28 of a contractual relationship between the parties, since

16

the covenant is an implied term in the contract."). However, even without an underlying agreement, California law allows primary and excess insurers to recover from one another for their bad faith refusal to accept a reasonable settlement offer under the theory of equitable subrogation.  <u>Fireman's Fund Ins. Co. v. Maryland Cas. Co.</u>, 21 Cal. App. 4th 1586, 1600 (1994).  Equitable subrogation allows the insurer to "stand[] in the shoes of the insured" and assert all claims against another insurer which the insured himself could have asserted. <u>Id</u>. at 1595-97.  "The doctrine of [equitable] subrogation is not a fixed and inflexible rule of law or of equity. . . . [It is] the natural consequence of a call for the application of justice and equity to particular situations." <u>Han v. United States</u>, 944 F.2d 526, 529 (9th Cir.1991) (quoting <u>In re Estate of Johnson</u>, 240 Cal. App. 2d 742, 744-45 (1966)).

The California courts have not limited equitable subrogation recovery to excess insurers; primary insurers may also bring a claim under this theory of liability. In <u>Diamond Heights</u>, the court found that the primary insurer could proceed on an equitable subrogation theory against the excess insurer where the excess insurer arbitrarily vetoed a reasonable settlement and forced the primary insurer to proceed to trial and bear the full costs of defense. <u>Diamond Heights</u>, 227 Cal. App. 3d at 580.  The court reasoned that "[a] contrary rule would impose the same unnecessary  burdens upon the primary

insurer and the parties to the action, among others, as
does the primary insurer's breach of its good faith duty
to settle. . . . [I]t imperils the public and judicial
interests in fair and reasonable settlement of lawsuits."
Id. at 580-81 (internal quotation omitted).  Similarly in
Sequoia Ins. Co. v. Royal Ins. Co. of America, 971 F.2d
1385 (9th Cir. 1992), the Ninth Circuit, applying
California law, found that "equity and public policy
require[] that [equitable subrogation] claims be heard
defensively" and held that there was a triable issue as
to which insurer breached its duty to settle.  Id. at
1392.  See also Kelley v. British Commercial Ins. Co.,
221 Cal. App. 2d 554, 563 (1963) (rejecting the theory
that appellant "owed no duty of good faith toward its
insured because it occupied the position of a secondary
or excess carrier and took no active part in the defense
of the Kelley action").

    The Court finds that fairness and equity require that
Hudson, a primary insurer, be permitted to assert a
counterclaim for equitable subrogation against AAIC, an
excess insurer, for its alleged failure to reasonably
settle the Fretz Action, thereby exposing Hudson to
"unwarranted liability" for defense costs and costs and
interest on the Judgment.  Diamond Heights, 227 Cal.
App. 3d at 579.  To hold otherwise would produce the
inequitable result that an excess insurer could bring a
claim for equitable subrogation against a primary
insurer, but the excess insurer would be immune from such

a claim against it.  This offends the public interest in
the "fair and reasonable settlement of lawsuits."  Nw.
Mut. Ins. Co. v. Farmers' Ins. Group, 76 Cal. App. 3d
1031, 1045 (Ct. App. 1978).  Moreover, the theory of
equitable subrogation rests on the principle that each
insurer owes a duty of good faith and fair dealing to its
insured.  See Sequoia, 971 F.2d at 1392.  This principle
applies equally to excess and primary insurers.  See Nw.
Mut. Ins., 76 Ca. App. 3d at 1048 (acknowledging "the
duty of the excess insurer to settle within the limits of
its own policy").  Thus, if an excess insurer, like a
primary insurer, fails to accept a reasonable settlement
offer within its policy limits, it may be liable to the
other insurer for any excess liabilities.  This parallel
liability insures that the "burden for a loss [is] on the
party ultimately liable or responsible for it and by whom
it should have been discharged."  Fireman's Fund Ins., 65
Cal. App. 4th at 1296.

    AAIC argues that Hudson should not be permitted to
proceed with its equitable subrogation claims since it
only seeks to recover "costs," and not a portion of the
Judgment.  (Reply at 2-3.)  California case law directly
contradicts AAIC's argument.  The Diamond Heights court
held that when an excess insurer evaluates a settlement
offer, it must consider the "costs of defense and burdens
imposed upon all parties if the litigation continues."
Diamond Heights, 227 Cal. App. 3d at 580.  Thus, AAIC's
duty to reasonably settle the Fretz Action includes an

obligation to consider the costs imposed on the primary insurer and the insured.  If AAIC can be found to have acted unreasonably in refusing Fretz's settlement offers, AAIC may be liable for any excess liability Hudson paid, including defense costs and costs and interest on the Judgment.  See Maryland Cas. Co. v. Nationwide Mut. Ins. Co., 81 Cal. App. 4th 1082, 1088 (2000) ("Equitable subrogation allows an insurer that paid coverage *or defense costs* to be placed in the insured's position to pursue a full recovery from another insurer who was primarily responsible for the loss.") (emphasis added); Travelers Cas. & Sur. Co. v. Am. Equity Ins. Co., 93 Cal. App. 4th 1142, 1152, 113 Cal. Rptr. 2d 613, 620 (2001) ("[Equitable subrogation] commonly applies to shift defense costs between primary and excess insurers."); Cont'l Cas. Co. v. U. S. Fid. & Guar. Co., 516 F. Supp. 384, 391 (N.D. Cal. 1981) ("[W]here an insurer acts in bad faith by refusing a reasonable settlement demand within policy limits, the damage to the insured is measured by the *entire amount of the excess liability*.") (emphasis added).

AAIC has not cited a single case, and the Court has found none, supporting its argument that California law bars a primary insurer from bringing a claim for equitable subrogation against an excess insurer to recoupe defense costs and costs and interest paid as part of a settlement.  The Court therefore holds that Hudson has stated a counterclaim for equitable subrogation

against AAIC for its alleged unreasonable failure to settle the Fretz Action within its policy limits.

### b.   Hudson cannot maintain a claim for equitable indemnity against AAIC

However, Hudson's second counterclaim for equitable indemnity cannot stand.  In <u>Fireman's Fund Ins. Co. v. Commerce & Indus. Ins. Co.</u>, C-98-1060VRW, 2000 WL 1721080 (N.D. Cal. Nov. 7, 2000), the Court held that "excess insurers are limited to equitable subrogation when seeking reimbursement from a primary insurer" and cannot proceed under a theory of equitable indemnity.  <u>Id.</u> at *5.  The court in <u>Fireman's Fund Ins. Co. v. Maryland Cas. Co.</u>, 21 Cal. App. 4th 1586, 1599 (1994), discussed the rationale underlying this distinction.  The court found that since there is no underlying contractual relationship between the parties, a primary insurer owes no independent duty of good faith and fair dealing to an excess insurer.  <u>Id.</u>  Therefore, no independent claim for breach of the implied covenant exists, and insurers can only proceed by way of subrogation.  <u>Id.</u>

Based on this controlling case law, the Court finds that Hudson cannot state a counterclaim for equitable indemnity against AAIC.  Hudson's second counterclaim fails as a matter of law.

### 2.   A triable issue of fact exists as to AAIC's good

1                  **faith duty to reasonably settle the Fretz Action**

2

3     Hudson's first claim for declaratory relief and third

4 claim for equitable subrogation rest on the theory that

5 AAIC unreasonably refused to settle the Fretz Action

6 within its policy limits.

7     AAIC insists that it cannot be liable under these two

8 claims because there is no coverage under AAIC's Excess

9 Policy for the defense costs and costs taxed against

10 Minuteman.  (Reply at 6.)  This argument fails to

11 appreciate the purpose of an equitable subrogation claim.

12 As the court in <u>Fortman v. Safeco Ins. Co.</u> described:

13         "The reciprocal rights and duties of several
        insurers who have covered the same event . . .

14         flow from equitable principles designed to
        accomplish ultimate justice in the bearing of a

15         specific burden.  As these principles do not
        stem from agreement between the insurers their

16         application is not controlled by the language of
        their contracts with the respective policy

17         holders."

18 221 Cal. App. 3d 1394, 1399 (Ct. App. 1990).  Thus, the

19 provisions of AAIC and Hudson's insurance policies do not

20 control the outcome of Hudson's counterclaims for

21 equitable subrogation or declaratory relief, since these

22 claims are based on equitable, not contractual

23 principles.  <u>See also</u> <u>Nw. Mut. Ins. Co. v. Farmers' Ins.</u>

24 <u>Group</u>, 76 Cal. App. 3d 1031, 1050 (Ct. App. 1978).

25     There is a triable issue of fact as to whether AAIC

26 failed to reasonably settle the Fretz Action prior to

27 trial and within its $4 million policy limit. <u>See</u>

28

1  <u>Johansen v. California State Auto Assn.</u>, 15 Cal.3d 9, 16
2  (1975).  An insurer breaches its duty of to settle "when
3  it refuses settlement offers that are both within policy
4  limits and reasonable. An offer of settlement within
5  policy limits is reasonable when there is a substantial
6  likelihood that a jury verdict will be beyond those
7  limits." <u>Highlands Ins. Co. v. Cont'l Cas. Co.</u>, 64 F.3d
8  514, 517 (9th Cir. 1995).  The California courts have
9  recognized that "ordinarily whether the insurer has acted
10 unreasonably, and hence in bad faith, in rejecting a
11 settlement offer is a question of fact to be determined
12 by the jury." <u>Walbrook Ins. Co. v. Liberty Mut. Ins.</u>
13 <u>Co.</u>, 5 Cal. App. 4th 1445, 1454 (1992).
14     It is undisputed that Fretz made several settlement
15 offers prior to trial that were within AAIC's policy
16 limits.  Therefore, the sole issue is whether AAIC
17 reasonably refused these settlement offers.  Based on the
18 evidence AAIC had before it when it considered the
19 numerous settlement demands prior to trial, the Court
20 cannot find as a matter of law that AAIC reasonably
21 refused Fretz's settlement offers under $4 million.  For
22 example, defense counsel's June 28, 2010 Report raises
23 significant issues as to whether it was reasonable to
24 conclude that Fretz suffered permanent brain damage in
25 the accident, and thereby exposed AAIC to substantial
26 liability.  Moreover, triable issues of fact remain as to
27 AAIC's ability to reasonably rely on defense counsel's
28

calculation of Fretz's costs for lifetime medical care
and his Pretrial Report estimation that a net verdict
would fall in the range of $3.1 to $3.25 million.
Construing the evidence in the light most favorable to
Hudson, questions also remain as to whether it was
reasonable for AAIC to reject Fretz's $3 million
settlement offers, while setting aside reserves above $3
million.  The undisputed evidence presented is sufficient
to raise a triable issue as to the reasonableness of
AAIC's refusal to settle the Fretz Action within its
policy limits.  See <u>Lexington Ins. Co. v. Sentry Select
Ins. Co.</u>, CV F 08-1539LJO GSA, 2009 WL 1586938, at *16
(E.D. Cal. June 5, 2009) (denying summary judgment where
excess insurer "raises significant issues as to primary
insurer duties and whether it could have settled the []
action within policy limits and far short of the
verdict").  Factual issues preclude the Court from
concluding that Hudson is liable as a matter of law for
the defense costs incurred during trial and for the
$219,289 in costs and prejudgment interest it paid as
part of the Judgment.


**IV. CONCLUSION**


     For the foregoing reasons, the Court GRANTS summary
judgment on Hudson's second counterclaim for equitable
indemnity and DENIES summary judgment on Hudson's first

1  and third counterclaims for declaratory relief and
2  equitable subrogation.
3
4
5
6
7
8
9
10
11
12  Dated:  April 3, 2013
                                        Jesus G. Bernal
13                                United States District Judge
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28